"The rule is considered settled in this state that neither original statutes nor amendments have any retroactive force unless in exceptional cases the Legislature so declares."

Turning again to the section of the Building Code involved in this appeal, I cannot escape the conclusion that to apply it to buildings already erected when the Code was adopted would necessarily be to give it a retroactive effect. In such cases its application would be to make that unlawful which theretofore had been lawful, and to require the partial and perhaps considerable reconstruction of a building which had been erected in accordance with existent laws. May the section be construed so as to act retrospectively? I think not. It certainly is not made so to apply by specific words, and it would not be rendered meaningless if not so construed, for it would be given full effect if applied to buildings erected after its adoption. The corporation counsel refers us to Health Department v. Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, and Tenement House Department v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, as instances of cases in which health laws have been applied retroactively. In both of those cases, however, the statutory provisions were expressly made applicable to existing structures, and therefore did not fall within the rule above quoted. The learned Appellate Term placed its opinion in part upon an excerpt from the opinion of the Court of Appeals in Racine v. Morris, 201 N. Y. 240, 94 N. E. 864. That case, however, involved no such question as is involved here. The ordinance there discussed was section 95 of the Building Code, providing that all openings into hoistways or elevator shafts should be protected with a substantial guard or gate which "should be kept closed at all times except when in actual use." The defendant had provided sufficient guards or gates, but his fault lay in leaving one of them unclosed during the nighttime. That there had been a violation of the ordinance was not seriously questioned; the point of dispute being whether such violation gave a cause of action to plaintiff. My conclusion is that the order of the Appellate Term should be reversed, the ground of such reversal being that the section sought to be enforced cannot be construed so as to act retroactively, and that, unless so construed, it does not apply to buildings erected before the adoption of the Building Code, and which were lawfully constructed buildings when that Code was adopted.

---

(148 App. Div. 251.)

ERNST et al. v. LETTMER.

(Supreme Court, Appellate Division, First Department.     December 29, 1911.)

NOVATION (§ 1*)—CONSUMMATION.

Brokers, plaintiffs' bankrupts, bought stock for W., on his order, and he paid them the purchase price. Thereafter, when, so far as appears, the brokers were holding the stock for W., there being no evidence of a conversion thereof either by an unauthorized use of it, or by their refusing to deliver it on a demand by him, so that there was no money owing by the brokers to W., defendant, who owed the brokers $20,000,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

asked them to transfer that amount from W.'s account to his account, and, on their statement that an authorization from W. would be necessary, he obtained, and presented to them, a written direction from W. to that effect. In the meantime, the brokers had suspended payment, and admitted their insolvency, and therefore said they could make no alterations in their books, evidently considered essential to carry out the arrangement; so W.'s authorization was returned to defendant, and by him to W., who destroyed it. *Held*, that the situation was left as it was before, and that there was no novation, and consequently no discharge of defendant's liability.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 1; Dec. Dig. § 1.*]

Exceptions from Trial Term, New York County.

Action by Irving L. Ernst and others, trustees in bankruptcy of Joseph M. Fiske and others, individually and composing the firm of J. M. Fiske & Co., against Justus G. Lettmer. Verdict was directed for plaintiffs, and defendant moves for new trial on exceptions taken at the trial ordered to be heard in the first instance in the Appellate Division. Exception overruled, and motion for new trial denied.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Daniel P. Hays, for plaintiffs.
John Thomas Smith, for defendant.

INGRAHAM, P. J. This action was by the trustees in bankruptcy of J. M. Fiske & Co. to recover upon two causes of action. The first was upon a promissory note made by the defendant to his own order, dated December 2, 1909, whereby three months after date he promised to pay to his own order $2,500, and which said note was indorsed in blank and delivered to the bankrupts; and the second was to recover the sum of $19,566.10, the purchase price of certain stocks, bonds, and securities purchased by the bankrupts for the account of the defendant, and which sum of money was advanced by the bankrupts in connection with the purchase thereof. The answer of the defendant admits the making and execution of the note, and apparently admits the allegations in relation to the second cause of action, except that there was due and unpaid the sum of money sought to be recovered.

For an affirmative defense to the first cause of action it is alleged that Wood & Sons, customers of the defendant, ordered the defendant through Fiske & Co. to purchase for their account 100 shares of the capital stock of the Northern Pacific Railway Company on the 14th of January, 1910; that thereafter Fiske & Co. informed Wood & Sons that they had purchased the same; that thereupon said Wood & Sons paid to Fiske & Co. $13,652.52, the purchase price thereof, and instructed Fiske & Co. to have said stock transferred upon the books of the said company to the name of J. R. Wood & Sons; that thereafter on the 17th of January Wood & Sons ordered Fiske & Co. to purchase for their account a second 100 shares of the capital stock of the Northern Pacific Railway Company, and the latter informed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wood & Sons that they had so purchased the same, and that thereafter Wood & Sons on the same day paid Fiske & Co. $13,512.50, the purchase price thereof, and instructed Fiske & Co. to have said stock transferred to J. R. Wood & Sons on the books of the said railroad company; that in violation of their said agreement and instructions Fiske & Co. did not transfer, or cause said capital stock to be transferred, to Wood & Sons, and have refused and still refuse and neglect to deliver the same to the defendant or to J. R. Wood & Sons, or to pay the defendant or J. R. Wood & Sons the value thereof, to the damage of the defendant in the sum of $27,275. The answer realleges the facts set forth in this defense to the first cause of action as a separate and distinct defense to the second cause of action and by way of counterclaim; and also as a second defense to the second cause of action alleges that the defendant paid to Fiske & Co. on the 19th of January, 1910, the sum of $20,000, being in full payment of and in full accord and satisfaction of the amount alleged in the second cause of action to be due from the defendant to Fiske & Co.

For a third defense to the second cause of action the defendant alleges that on the 19th of January, 1910, the firm of Fiske & Co. were indebted to Wood & Sons in an amount exceeding $20,000; that on the 19th of January, 1910, and prior to the appointment of trustees herein or of any receiver of said Fiske & Co., this defendant, at the request of Fiske & Co., assumed said obligations of Fiske & Co. to Wood & Sons to the extent of $20,000, and agreed to pay the same in discharge of the indebtedness set forth in the second cause of action, and to the extent of $433.90 on account of the claim of indebtedness set forth in the first alleged cause of action; and the defendant demands judgment dismissing the complaint and an affirmative judgment against the plaintiffs for the sum of $27,275.

The plaintiffs served a reply to the counterclaim, and the case came on for trial at Trial Term. The defendant assumed the affirmative and called Mr. Fiske, one of the bankrupts, as a witness, who testified that, under the arrangement existing between the bankrupts and the defendant, the bankrupts executed orders at the defendant's request prior to the 19th day of January, and the bankrupts were to keep the books; that the firm of Wood & Sons were defendant's customers; that on or about January 17, 1910, the bankrupts received a telephone order from Wood & Sons to purchase 100 shares of the Northern Pacific Railway stock. Subsequently the bankrupts purchased the stock, and on January 17, 1910, received a check from Wood & Sons for $13,762.50, the purchase price. Subsequently the bankrupts received another order to purchase an additional 100 shares of the said Northern Pacific stock, which the bankrupts purchased for Wood & Sons, and on January 18th received a check for the purchase price, including commissions of $13,512.50. This apparently closed the transaction, and all that remained was to have the stock transferred to Wood & Sons.

On this transaction as it stood it was quite evident that the bankrupts owed Wood & Sons no money, but Wood & Sons were entitled to receive on demand from the bankrupts 200 shares of the Northern

Pacific Railway stock; and, so far as appears, this transaction was correctly entered in the books of the bankrupt firm. This 200 shares of stock was not delivered to Wood & Sons, but, so far as appears, no demand was made upon the bankrupts for the stock, and it does not appear what, if anything, had been done with it prior to the 19th of January, 1910. On the 19th of January, 1910, the defendant was indebted to the bankrupts in the amount of this note and on open account aggregating $22,066.10. The note, however, was not payable until March 2, 1910. About noon of January 19, 1910, Mr. Fiske, one of the bankrupts, made a demand on the defendant for the repayment of the money due from the defendant, when the defendant instructed Mr. Fiske "to transfer $20,000 from his account known as the J. R. Wood & Sons account" to his (defendant's) personal account. To that Mr. Fiske said that it would require an authorization from Wood & Sons which the defendant said he would obtain. At that time the books of the bankrupts showed a credit of 200 shares of Northern Pacific stock worth approximately $27,000, but there was no money due by the bankrupts to Wood & Sons. What Wood & Sons were entitled to was the 200 shares of stock. The defendant came back to the bankrupts' office later and produced a letter from St. John Wood, one of the members of the firm of Wood & Sons, directing the transfer from his account to the defendant of $20,000. Between the time of the first interview with the defendant and his return with this letter from Wood & Sons, the firm of Fiske & Co. had become involved financially, and had notified the Stock Exchange, of which they were members, that they were unable to comply with their contracts on the Exchange. So, when the defendant presented this letter of Wood & Sons to Mr. Fiske, he said that so far as he was concerned the transfer had been made, that he did not know whether he could make it on the books, as they had been turned over to the receiver. He then returned this authorization from Wood & Sons to the defendant, who accepted it, and that was the end of the transaction as between Fiske & Co. and the defendant. Mr. Fiske further testified that at about 12:30 he had notified the Stock Exchange that Fiske & Co. was unable to meet its obligations and from that time on the firm made no entry upon its books, and about 4 o'clock that afternoon a receiver came and took possession of the firm's property and assets. And his testimony was corroborated by Mr. Sherwood, one of the bankrupts, who was called on behalf of the defendant.

The defendant was then called as a witness, and testified that he never gave any directions to the bankrupt firm in relation to the purchase of this Northern Pacific stock; that those orders came directly to the bankrupts from Wood & Sons; that, after the demand by Fiske & Co. on the defendant for the payment of the $20,000, the defendant went to Mr. Wood, who gave him a certain written instrument directed to Fiske & Co.; that he took this paper to the office of Fiske & Co. and had a conversation with Mr. Fiske and Mr. Sherwood; that the defendant then took the paper that Mr. Wood had given him back to Mr. Wood, and Mr. Wood destroyed the paper; that the paper was:

"J. M. Fiske & Company—Dear Sirs: I hereby authorize you to transfer $20,000 from my account to the account of Mr. James C. Dettmer.
  "[Signed]                                        J. R. Wood & Sons."

Upon this testimony both sides rested, when both parties asked the court to direct a verdict. The court then dismissed each of the counterclaims, to which the defendant excepted. The plaintiffs then moved for judgment on the ground that the defendant had not proved any defense to the admitted cause of action. The court then directed a verdict for the plaintiffs for the amount claimed, and the defendant took an exception to the court's refusal to allow the defendant to go to the jury on the defense of payment alleged in the amended answer. There was no request to submit the question of fact as to the counterclaim to the jury, or to submit any question, except the question of payment.

The plaintiffs' cause of action having been conceded, the only question presented is whether it was in fact paid or discharged by the defendant prior to the adjudication in bankruptcy. The burden of establishing such payment or discharge was upon the defendant. Upon the facts as appeared upon the trial there was no money due by the bankrupts to Wood & Sons. The bankrupts held 200 shares of the Northern Pacific stock which was the property of Wood & Sons and to which they were entitled on demand. There is no evidence to show that the bankrupts had converted this stock to their own use, and no evidence of a demand by Wood & Sons of a delivery of the stock. If the bankrupts had the stock in their possession at the time of their failure, undoubtedly Wood & Sons would have been entitled to receive the stock from the bankrupts and could have enforced such claim after the adjudication in bankruptcy; or, if the bankrupts had converted the stock to their own use, Wood & Sons could have elected to demand the value of the stock from the bankrupts and could have recovered that amount, but, in the absence of proof of conversion, either by an unauthorized use of the stock, or of a demand for the stock and refusal by the bankrupts to deliver it, there was no obligation on the part of the bankrupts to Wood & Sons for either the value of the stock or the amount that Wood & Sons had paid the bankrupts on account of the purchase price. The effect of the proposed arrangement, by which the bankrupts were to accept a transfer of the bankrupts' liability to Wood & Sons as an offset or satisfaction of the bankrupts' demand against the defendant, would have been in effect a loan of money by the bankrupts to Wood & Sons and an application of the amount of that loan to the discharge of the defendant's obligation; and to that the bankrupts agreed, provided Wood & Sons authorized such a transaction. To carry out that arrangement the defendant had produced the authority from Wood & Sons; but, when that was delivered to the bankrupts, they had in effect suspended payment and had notified the Stock Exchange that they were unable to comply with their contracts, and for that reason the bankrupts said that they could not make any alteration in their books, which was evidently considered as essential to carry out the agreement that had been made.

So, the authorization by Wood & Sons was returned to the defendant, who returned it to Mr. Wood, from whom he had received it, and it was then destroyed. It seems to me that this situation was thus left just as it was before, and the arrangement had not been carried out because of the fact of the bankrupts' suspension between the time when the original arrangement was made and the production of the authority from Wood & Sons necessary to carry it out. Certainly, if Wood & Sons had demanded their 200 shares of stock from the bankrupts or their assignee, the conditions as they existed would have been no answer to a demand for the stock. True, Wood & Sons had authorized a transfer of their credit on the books of the bankrupts to liquidate the defendant's obligations, but that arrangement had not been carried out. The authority that had been given to carry it out had been returned to Wood & Sons, and, under the circumstances, its destruction must, I think, be accepted as a revocation of the authority and an abandonment of the proposed arrangement. There was no dispute as to the facts, and the agreement by the bankrupts to accept a charge against Wood & Sons as a discharge of the defendant's obligation, conditioned as it was upon the production of the authority from Wood & Sons to make such a charge, had not been carried out prior to the time when the bankrupts had substantially suspended payment and admitted their insolvency, and therefore was abandoned by the parties. The arrangement had therefore never become consummated and completed, and the return of the authorization to Wood & Sons and its destruction by them was a revocation of their authority to substitute an obligation against them for the obligation of the defendant; and the agreement being thus unexecuted, and the authority of Wood & Sons to consent to the substitution revoked, the liability of the defendant was never discharged. If the bankrupts had retained the authority from Wood & Sons, and there had continued an existing authority, to $20,000, and the substitution of liability had been actually consummated, there would probably have been a novation which would have authorized the bankrupts to look to Wood & Sons for the payment of the $20,000 for which the Northern Pacific stock was held as security, and the defendant would have been discharged; but as that transaction was never actually carried out, and when the defendant attempted to carry it out the bankrupts, instead of accepting the authority from Wood & Sons as a substitution of liability, returned the authority to the defendant, who returned it to Wood & Sons, who destroyed it, it seems to me that the whole proposed arrangement was abandoned, and the authority to make the substitution actually revoked.

It follows, therefore, that the exceptions must be overruled, and the motion for new trial denied, with costs. All concur.